The 4th District's Bill of Order of the State of Illinois is now convened. The Honorable Craig B. Arnden presiding. Morning, Counsel. Be seated. Thank you. It's nice to be in person. It may be convenient to be on Zoom, but it's nice to be in person. The first case today is 4-24-1213, Humane Farming Association, et al. v. Boone County, et al. Could Counsel for the Appellant please state your name? Yes, Your Honor. I'm Jessica Boone, and I'm one of the community leaders for the Appellants. Will you be splitting your time? No, Your Honor. Just a minute. Counsel for the Appellant, could you please state your name for the record? Yes, Your Honor. I'm Scott Paul, and I'm one of the Appellants. Thank you. Counsel for the Appellant, you may begin. Good morning, Your Honors. May it please the Court. My name is Jessica Boone, and I represent the Plaintiffs Below, Humane Farming Association, Showing Animals Respect for Kindness, or SHARK, and Steve Hindi. The Humane Farming Association, SHARK, and President Steve Hindi are dedicated to the humane treatment of animals. That is true. As part of their organizational missions, these two organizations conduct animal cruelty investigations in Boone County and across the state of Illinois, and indeed across the nation. Plaintiff Steve Hindi, as a resident of Northern Illinois, just in the neighboring county to Boone County, regularly travels to rodeo events in Boone County, including those at issue in this case. He has dedicated countless hours of personal advocacy to help animals suffering from cruelty he has witnessed at these events. The underlying facts are not in dispute here. The traditional log chariot events that are being permitted in Boone County include up to 10 separate rodeo competitions, including one called El Coleadero. This is the core competitive element of log chariot. During El Coleadero, a mounted rider is required to take his horse up to a bucking steer, grab the steer's tail, and throw the steer to the ground, and wrap the tail around the steer's leg. Everyone agrees. The county admits. Steers end up with a degloving of the tail, which means that the tail is ripped off from the animal. Steers end up with broken legs, broken arms, or other parts of their body can be broken. Horses are impaled. Just intense and immense animal injuries are caused by these events in every single event that happens. Defendants understand that this happens at these events, and yet they still are permitting these events in violation of their local ordinances. Plaintiffs have alleged, and have given the opportunity, that these El Coleadero events cause intentional animal harm each and every time, and that they constitute animal neglect and cruelty under the Illinois Humane Care for Animals Act. But we're really not litigating the facts here today, are we? No, Your Honor. Today we're here because the trial court dismissed our case for lack of standing. And so the remainder of my argument will focus on those arguments. Plaintiffs appeal to this court for reversal and remand of our case on the merits, so that the trial court can consider whether or not Boone County did in fact violate these ordinances. First, plaintiffs have standing to pursue a writ of mandamus. Our first claim for writ of mandamus involves whether or not the Boone County Zoning Enforcement Officer has power to deny permits to events featuring El Coleadero. The standing test for a writ of mandamus requires that a plaintiff first establish a clear affirmative right to relief, second, a clear duty of the public officer to act, and third, a clear authority in the public officer to comply. Parts two and three of this test are plainly established. At the time the plaintiffs brought this suit, defendants had a clear and mandatory duty to evaluate the applications for La Chariota events and deny them if they had evidence of prohibited acts under the ordinance. Defendants conversely had no authority to approve permits when they were confronted with evidence of prohibited acts. What is your client's clearly ascertainable right or interest in each protection? Thank you, Your Honor. With respect to the affirmative right prong of this test, plaintiffs have been injured through what's conceptually known in courts as an aesthetic injury. Do we have that in Illinois? You do have that in Illinois. According to Greer v. Illinois Housing Development Authority, a plaintiff can have a clear affirmative right to relief if they suffer from a distinct and palpable injury to a protectable interest fairly traceable to the defendant's conduct. And this distinct and palpable injury has been recognized by the United States Supreme Court by the Seventh Circuit interpreting Illinois law and by courts across the country as encompassing a right to view animals in humane conditions. According to the U.S. Supreme Court, in fact, quote, of course the desire to use or observe an animal species even for purely aesthetic purposes is undeniably cognizable for the purposes of standing. Are there any Illinois cases that follow that? Not yet. And so we are hoping that this will be the very first one to recognize an aesthetic interest in viewing animals. Courts have long recognized this aesthetic injury in other jurisdictions, including in the case ALDF v. Glickman, which is a D.C. Circuit case. In that case, an individual established that he had an aesthetic interest in viewing chimps in humane conditions in captivity, such that he was allowed to sue the United States Department of Agriculture over its lack of primate enrichment regulations. In the Eighth Circuit, interpreting an Iowa, Northern District of Iowa opinion, in Keel v. Selmer, the Eighth Circuit recognized that a plaintiff can have an aesthetic interest in watching animals suffering at a roadside zoo in Northwest Iowa in a little town called Manchester. The Seventh Circuit directs that aesthetic injuries must be more than generalized grievances common to all members of the public, and though they weren't addressing whether or not an aesthetic injury can impact animal-human relationships, in Greer, the court recognized that a neighbor's group, an aesthetic interest in a development project, empowered them to sue over the financing and zoning issues in that project. That's the Greer case. The complaint establishes that HFA and SHARC's members, including Mr. Hindy, have suffered an aesthetic injury as a result of their participation in these rodeo events. They have expended countless resources investigating, documenting, and bringing these issues to the county. We are here only because the county did not hear our administrative appeals of these cases. We really hoped and desired to have these issues handled administratively because we think the zoning ordinance is very clear on these points, but the county worked very hard to deny our right to appeal, first alleging that the zoning enforcement officer couldn't do anything to help us, and that the zoning appeals board had no power to hear an appeal of the zoning enforcement officer, which is plainly not true, and they've now abandoned that position in actual briefing when it comes to the court's powers here. They also held that we did not have a standing as people who were parties to the proceeding, and so the zoning board couldn't help us because the claims were moot as a result of them having happened over the weekend before the permits were issued. In one case, at 9 p.m. on the Friday before the event began, and another case at 5 p.m. the Friday night before the event began. Obviously, there wasn't much we could do to appeal if they were going to issue the permits so late at night on a Friday the night before. Our fourth cause of action addresses the violations of procedural due process that that entails, not just for plaintiffs. Plaintiffs are uniquely injured because our appeal was denied in those conditions, but that applies to everyone in the county of Boone who might be injured by a permit like this if the county is going to approve them the night before an event happens and deny everybody a right to appeal. I'm jumping ahead a little bit, but while we're on this topic, that exact practice violates the zoning ordinance's 14-day requirement. So under the zoning ordinance, an application must be submitted 14 days before an event in order to give the zoning enforcement officer time to evaluate the permit and to give the people who might be harmed by the permit opportunity to appeal. So in accepting an application the night before, the county is not just violating its own ordinance with respect to denying someone a right to appeal, but denying that really important 14-day window. On the subject of that just standing, aesthetic injury satisfies the injury in fact and cognizable interest prong of the test. There can be no doubt that the county has caused plaintiffs' injuries by continuing to permit these events in the manner and way that it is permitting them. And there also can be no doubt that a favorable ruling from the court interpreting the zoning ordinance and telling the county, look, this is what your law says you do have power to do, you are not without power, would redress plaintiffs' injuries. First, because the county would know that it does have the power to deny these permits upon a finding of prohibited acts. And second, because the county would be required to hear plaintiffs' administrative appeals, which would then at least give plaintiffs an opportunity to present this conduct to the Zoning Appeals Board because the Zoning Appeals Board knows that this is happening at this point. Plaintiffs have standing to administratively appeal defendants' unlawful conduct as well. Our second claim for writ of mandamus attacks the county's decision to deny plaintiffs those rights to appeal. As I said before, in the actual administrative back and forth, the county denied our appeal for reasons that they are not taking the position now. Now they say it's because we do not qualify as an aggrieved party. And the county also now says that the Zoning Appeals procedures are not mandatory, but rather discretionary. And Judge Balow agreed with that discretionary view of the Zoning Administrative Appeals and he also agreed that we didn't qualify as aggrieved parties. So, we disagree. First, the zoning ordinance clearly establishes that a temporary use permit is appealable. The language within this section on temporary use permits provides that appeals are administratively handled by the Zoning Board of Appeals pursuant to Section 4.29. And Section 4.29 sets forth the procedures by which an appeal should be handled. First, that the appeal would stay, execution of the permit being appealed, until the Zoning Board of Appeals fixes a time for the appeal within a reasonable amount of time. The language of that ordinance says, shall. The Zoning Board shall have a hearing. So, it's absolutely not discretionary whether or not the staff give someone a right to appeal who qualifies as an aggrieved person. We think that's easily disposed of. So, the real crux of the issue is whether or not plaintiffs can qualify as an aggrieved person. Upon appeal, oh sorry, according to the zoning ordinance, an appeal to the Zoning Board of Appeals may be made by, quote, any person, firm, or corporation, or by any office, department, board, or bureau aggrieved by a decision of the zoning enforcement officer. It doesn't say certain decisions, and it doesn't say any person who's a party to the suit, and it does not say applicants and regulated entities only. It has a very broad list. Any person, a board, a corporation, a bureau, a department. This is a very long list. If the county wanted to say only the applicant or the regulated entity have a right to appeal, they certainly could have, and they might have amended their ordinance since the time that we filed our appeal in order to make that change, but they have not. Can I ask a question? Yeah. You've cited Greer several times. Where in Greer does it recognize aesthetic injustice? Well, in Greer, the defendants argued that the neighborhood group did not have a protected interest in the zoning permitting decisions of the housing development. The Supreme Court considered whether or not a regulated entity or a participation requirement was necessary in order to establish standing to enforce these zoning ordinances, and I believe it was a financing of the Illinois Department of Housing Authority scheme. The court said, look, a zone of interest test is what you're asking for, and Illinois has considered whether or not to limit standing in these cases to individuals that fall within the zone of interest of a statute or regulatory scheme, and we reject it. The zone of interest is far too limiting because the people who fall within the zone of interest are necessarily regulated by the conduct, and they would never appeal their own unlawfully granted decision. So in order to preserve the actual enforcement of these statutes, we need to make sure that people can't sue. The type of injury that the neighbors brought to the table was an aesthetic interest in their community, and the type of development that was going in was going to be low-income housing, and they objected to the changing character of their community. Darren Greer did expressly state that aesthetic injury is a cause of action. Judging from your question, Your Honor, I'm guessing it doesn't explicitly call it an aesthetic injury. So I'm extrapolating from that case to argue that the recognition of a neighborhood group's right to sue in those circumstances when their objection was to the character of their community rather than a financial, pecuniary, or property interest at issue qualifies as an aesthetic injury. All right. Our third cause of action has to do with whether or not plaintiffs have a right to seek judicial review under the Illinois Administrative Law, Illinois Administrative Procedures Act, no, Administrative Review Law, which applies to any political subdivision. Nobody disputes that it applies to the county. Administrative decisions, the definition of administrative decisions, however, has become important because the county argues that the zoning enforcement officer's decision does not qualify as an appealable decision under the Administrative Review Law. An administrative decision is any decision, order, or determination of any administrative agency rendered in a particular case which affects the rights, duties, or privileges of the parties and which terminates the proceedings before the administrative agency. Plaintiffs argue that the decision of the zoning enforcement officer which the zoning ordinance expresses vastly permits the appeal of qualifies as an administrative decision under the Illinois Administrative Review Law. According to the Supreme Court, somebody can take advantage of the Illinois Administrative Review Law and appeal an administrative decision if they have suffered quote, some injury in fact to a legally cognizable interest. So we're back to a legally cognizable interest which plaintiffs again argue that aesthetic injury and witnessing these animals suffering inhumanely qualifies. Finally, plaintiffs no doubt have standing to enforce their own procedural rights in due process. It is always true that Do you see any distinction in the reference to aesthetic injury in Greer where it's involving a finite set of circumstances a neighborhood which these people are already a part of versus aesthetic injury that's created by people going to an event exposing themselves to what they know is going to be there and then saying well because I'm upset by what I saw I have a cause of action. Do you see no distinction between those two? I do see that distinction Your Honor and I can appreciate that criticism of the theory. I will represent to the court that plaintiffs do have members who are ready to stand in the shoes as standing declarants before the trial court who live next door to these properties who made those allegations in the complaint. So Mr. Hindy's neighboring interest in a county next door who's going to these events and photographing and filming so he travels to get there. He does travel to get there. This is somebody who's claiming an injury because they purposely inject themselves into the circumstance that's going to cause them some sort of emotional distress. If that were the threshold I could envision all kinds of aesthetic injuries that get created by people who just decide to inject themselves and claim a cause of action. When courts have recognized aesthetic injuries at the U.S. Supreme Court, the D.C. Circuit, the 8th Circuit, and the Northern District of Iowa just to name a few they have grappled with that question on occasion. And what they find is that the plaintiffs who are coming to the court in order to sue on the basis of their aesthetic injury have not suffered alone because of their attending these events or visiting the zoo or visiting the primates in captivity. But rather they went voluntarily the first time out of curiosity or because they were genuinely interested or because they wondered what a La Chariota event meant and then were shocked at what they were seeing and developed an emotional attachment to the animals who were suffering. They then advocated for years to local, state, and federal authorities with authority to do something about the animal cruelty they witnessed and further suffered because they were rebuffed at every turn. And I think that the facts of this case establish that we acted exhaustively in order to try and get local and state officials to do something about this. There are no civil or criminal statutes in Illinois that relate to cruelty to animals? No civil or criminal. The Illinois Department of Agriculture has authority to enforce the cruelty code. So there's at least that one. And we did advocate to the Illinois Attorney General asking them to do an investigation and to enforce the law. We also advocated to Boone County law enforcement officials asking them to enforce the law. And we advocated to the Boone County Civil Department and zoning enforcement and to the county commission. There was even a point in the proceedings in which the county commission agreed with plaintiffs and thought that they should engage in a fact-finding mission to determine how they could strengthen the ordinance in order to make it clear to the zoning enforcement officer that they have the power to deny these permit applications for these events. But that fell apart and nothing came of it. So in truly every way, we have tried everything except this lawsuit. And that's almost always a precursor to recognition of aesthetic injury is an effort to do something other than bring this to the court, which is what we did. We completely understand and recognize that tension. So in conclusion, plaintiffs have a right to enforce their own due process rights. You know, the actual relief we seek on our due process claim is a declaration that the zoning ordinance does provide a right of appeal to people in these circumstances and that the county violated those rights when they denied the appeals or dismissed them without giving us a hearing. And your honors, with that, we would ask that the court reverse and remand the judgment to the trial court. Thank you, counsel. You will be given an opportunity to revoke. Thank you. Counsel to the appellate. Good morning, your honors. This is the court. My name is Scott Calkins. I represent the Boone County Board, Boone County Building and Zoning, and Boone County Zoning Board of Appeals. Your honor, I think you touched a lot during the initial argument by the appellants on one of the key issues in this case, and that relates to whether or not aesthetic standing is recognized in Illinois. And I will say that the current case law suggests that it does not. Landmarks Preservation Council of Illinois versus the city of Chicago is a 1988 case from the Illinois Supreme Court that specifically says aesthetic interests will not be disregarded or not controlling on the issue of standing. This indicates that the state of Illinois, at least our courts here, have not adopted an aesthetic standing type cause of action, type legal injury. I note that the appellants have cited cases from the U.S. Supreme Court and various other federal courts, but federal standing and state standing are not identical. A case cited by the plaintiffs is Fawcett versus Walgreen Company, which is a 2024 case out of the 2nd District that specifically says that the federal standing rules do not apply in state court. And they specifically quoted a U.S. Supreme Court case of Sarko versus Kaddish for that proposition. So, in order for this court to determine that aesthetic standing exists here and provides the plaintiff with a cause of action, they must expand,  or create an exception to landmark. And that's done by adopting the holdings in something like Animal Legal Defense Fund versus Glitman or  which are two different cases, just in terms of the context of the case. Both cases involve zoos. In those cases, the defendant's  arguments were the basis for the plaintiff's  They had a duty to comply with certain federal laws and regulations, including the Animal Welfare Act, which the plaintiff said the zoos were not complying with. Isn't that basically the argument here? No, it's not. It's actually the reverse of the argument here. The argument here is that the cruelty to the animals is being imposed by any of the Boone County defendants. So that's the distinction in this case. And that kind of gets back to what the duty of the Boone County defendants is. In the statute it's clear that you file an application. You file 14 days prior to the event, you're the applicant. There's 14 different criteria that the application needs to meet and those things are, you know, having bathrooms, adequate parking, things for emergency vehicles, those types of  The zoning enforcement officer reviews that and then the zoning officer has the authority to grant the temporary use permit. The plaintiff's own complaint agrees that both applications that are issued in this case were filed within the 14 day period of time that they had to be filed in. The issue is whether the zoning enforcement officer has a ministerial duty to reject the applications if there's prior evidence of conduct on the part of the applicant that would violate the  And the statute,  ordinance, does not impose that  It says that the zoning officer shall have the authority to deny the application in the event of past violations or illegal conduct. So the zoning officer has a ministerial duty which can't be enforced by a writ of mandamus. Writ of mandamus only applies to non-discretionary duties. I'm sorry, he doesn't have a ministerial duty, he has a non-discretionary duty as to whether or not he's going to exempt them. Now, we can all sit here and say, you know, that's a bad policy. I don't like it. If this guy's got a past violation, he should never be granted another permit or he should be banned for two years from having another permit. I don't think that that's a bad policy, but it's not Boone County's policy. And unfortunately or fortunately which side of this you come down on, that's not our job as the judicial branch of the government to say, Boone County changed policy. That's a legislative function. Same applies to the right to appeal. Well, when they're arguing due process, they're basically saying there's a problem with policy that violates a basic constitutional right. Well, the due process argument relates only to the appeal. It doesn't relate back to the right to appeal.  to have a Rothschild-Rialto event, you need to deny the application. Or if you're going to have a Rothschild-Rialto event by an applicant that has these past violations, you must deny it. That's different than the issue of the appeal. The appeal, I think, is a separate issue. In the appeal, it goes forward and says yes, there's a you disagree with the decision. But I think in that, Williams holds that the person that's filing the  it's got to be a party. And if you look at the statute, there's only two parties to the application process, the applicant and the  And this is not unique to the Boone County case. This was exactly the case in Board of Education of Roxanna Community School District Number 1 versus the Pollution Control Board. In that case, the Environmental Protection Act is identical to Zoning Ordinance 2.9.1, where it allows an appeal to be filed in the event that somebody is adversely affected by the determination of the board. Any party adversely affected. In that case, the Board of  didn't intervene. The petition intervened in the case after these pollution certifications were granted. They were denied to do so. And the court held therefore they cannot be deemed to be a party to the litigation with the right to  And there's a really interesting quote out of the Board of  Representatives  think is applicable here when they recognize that only a party did the certification process at that point is the applicant. It says, We recognize,  legitimate concerns may arise when only the parties permitted to participate in the regulatory process are regulators and the companies they regulate. That, however, is a matter for the General Assembly. The responsibility for the wisdom of legislation rests with the legislature and the courts may not rewrite statutes to make them consistent with the court's idea of orderliness and public policy. That's what we have here. The statute says, You have a right to  Any person can appeal. Williams says, Yeah, but that really applies to you You've got a big party if you don't participate in  you've got to participate in the process, and therefore you don't have a right to  We can like it, we can dislike it, we can disagree with it, but that's what the statute says. There's also a complaint that,  you know, you issued these things on Friday nights, 5 o'clock, 6 o'clock at night, and we're not in the proceedings, we don't get noticed that you've issued them, so we file these  Well, some of the appeals are filed prematurely. There's nothing in the zoning ordinance that allows for preemptory appeal. I didn't  know that they file appeals at 10.30 at night on a Friday night. Well, it's government. It's very unlikely to find a zoning enforcement officer or someone from the zoning board that is going to pick up an appeal at 10.30 at  So what happens is, the event occurs, at that point in  okay, you file the right to  and we can call the move, we can call the whatever, but the point of the fact of the matter is they're asking for a due process right to  simply to participate in a process. And there's case law that says specifically that you cannot, you can't participate in a process, you can't file an appeal simply to participate in a process.  it gets to the issue of whether Mr. Hindy has standing in this particular case. And again, I don't believe there's aesthetic standing that's in the law. Let's say we  okay, we're going to have aesthetic standing. Well, the relief that he wants isn't relief that we can give him. The relief he wants is you must mandatorily deny the petitions. We can't give you that relief. The statute doesn't permit that. Okay, well, then I have a right to  You've got to follow the appeal process. Well, we're following the appeal process as it's written. What is it about the appeal process you don't like? You don't like the process that the statute imposes? Okay. I can absolutely see that. But I don't believe that the process itself is violated by the way they're acting. So if Mr. Hindy doesn't have standing to bring his case, then the  doesn't have standing to bring his case in the context of the case.     he has shark. He's a member of   in HFA. He's the one seeing the events. That's exactly what the other members are presumably seeing. So if Mr. Hindy doesn't have standing, the best person suited to have  standing is       no other member has standing, and therefore there's no associational standing. That does not mean there's not organizational standing because those are different. Organizational standing is the organization has to have its own injury. Or associational standing is I'm representing my members. They have an injury. In the case of the organizational standing issue, you've got shark, which is stated purpose is to document animal abuse and cruelty in modern American rodeos throughout Illinois and  HFA, to protect farm animals through groundbreaking legislation, anti-cruelty investigations, legal action, and direct care for  They're saying they've been injured because they've had to use their organizational resources toward Boone County to stop these La Charrera rodeos from going on. That's their stated purpose. Doing something that's within your stated purpose does not establish organizational standing. And I think there's two cases that I think outline this, three cases that outline it, but grassroots is the first one that says although there's a drain on diversion of resources that may accompany the imperative by composing a portion of  there's no basis to conclude that it alone qualifies as injury sufficient for the organization. So you've got to compare that to havens and to    core mission was to make equal opportunity housing a reality in Richmond,  And what I did was provide counseling services, do investigations, refer cases on housing discrimination. Well, the city got involved and they said okay we're just going to racially steer    havens was intended to counsel and their purpose of counseling was defeated because my clientele is  I've steered them out of the  So home had to readjust their purpose and say okay, I'm not going to do that anymore. I'm going to divert my resources and now I'm going to fight racial steering. Different purpose. That creates damage. Common Cause Indiana versus Lawson is a similar thing. It's kind of a voters right group and their mission was advocacy for voter access, counseling on voter education, helping voters overcome challenges they face trying to vote, helping them register to  Indiana passes an act that says we're going to cleanse the voter rolls to cleanse people that probably or most certainly should have been on the voter rolls. They got cleansed when they should and got cleansed. And so the organization then had to flip their purpose to taking people that were cleansed off the rolls and putting them back on the  And the organization then had to flip their purpose to taking people that   off the   back on the rolls. And so     flip their purpose to taking people that were cleansed off the    rolls and putting them back on the rolls. And so the organization then had to flip their purpose to taking people that were cleansed off the rolls to put them back on the back on  And so  the whole purpose of the change action and that tax the focus is just on Boone County. So in that context there is no organizational standing that they have to have to submit. I also want to just really briefly touch on the Greer case. I don't believe Greer has associational standing. In fact, Greer in that case the residents that lived around it alleged that their property economic values would go down. It first alleged that the funding of the proposed development would cause injury to their interest in the economic value of a home. It also alleged it would cause interest to their living in a racially and economically integrated community. That would be more like an argument. Nobody is saying the zone of interest test applies here. So that would be my  Unless you have any questions I think I tried to cover all the arguments that they raised. I see no questions. Thank you. Thank you very much Mr.  Blum. Ms.  Thank you your  First with respect to landmark preservation council the court ruled that aesthetic injury is not controlling but is recognized. And then found that the members interests in just the        property at issue from the street was not enough to establish aesthetic injury. What we're talking about here is quite different because the aesthetic injury is derived from the emotional connection that these individuals who are members of these organizations make with the animals as they watch them suffering. Many of you have probably been to zoos which is a common place to establish the right to sue. Sometimes when you see animals in  suffering you might go and get someone to help. You might do something because we have a different connection with animals than we  buildings. That's why the injury has been recognized including in the state of Pennsylvania and Iowa. If anyone has questions about QLV Selmer I am the attorney who litigated those cases. I also want to discuss the two-step process and the ministerial versus non- discretionary process. Under the zoning ordinance it is true that in order to affect their mandatory duty to deny these  the zoning enforcement officer has to engage in some review. We are not asking the court to control that discretion. We are saying they have to  engage in some review. I want to correct something that my colleague stated. He is a member of SHARC and he is included in the complaint to help bolster the issues. He is not the only member of SHARC and he is not the only  of SHARC  is also affected by these competitions on a daily basis. By the noise and  and debauchery and also the animal cruelty. And finally with respect to organizational standing it is also true and my colleague was correct that these organizations investigate animal cruelty as part of their routine missions. But it is not true that they regularly engage or  resources to civil administrative enforcement. This is a new foray for them. They had not ever even thought about going to the zoning enforcement officer or the Boone County Board to try and change the law in order to fix this problem. So in that way they have  significant resources away from the core mission function of actually documenting cruelty and working with criminal law enforcement authorities in order to   problem. Thank you for your advisement. We will be in recess.